Good morning again. May it please the Court. Sonim Henderson for the Appellant Darnell St. Clair. I'm planning to reserve two minutes for rebuttal and I will try to watch my clock accordingly. In this case, the District Court misapplied the collective knowledge doctrine, letting the government take advantage of that doctrine while not holding it to the doctrine's basic requirements. So in United States v. Hensley, the Supreme Court said that when an officer requests that another officer make a stop, the officers who haven't witnessed anything themselves but are just being asked to make the stop can rely on that call to effectuate the stop. But the reasonable suspicion for the stop is the reasonable suspicion of the requesting officer. If the requesting officer lacks reasonable suspicion, so too do the responding officers. So it's your position that not the officer who initiated the traffic stop but the officers who pursued Mr. St. Clair would not have reasonable suspicion to stop him because he was the passenger? Is that what you're getting at? That's what I'm getting at. Yes, Your Honor. So what about Williams and other cases that establish that the officers have the authority to control the scene? So when they make a lawful traffic stop, and I don't understand you to be disputing that the officers couldn't make the traffic stop, that they can order passengers back into the car or out of the car, that they can keep people at the scene? So in terms of there being some other reasonable suspicion than what the district court identified? Well, no, but there was here, everybody agrees, a traffic violation. There was a traffic violation? Yeah, just focus on that for a second. Sure. So could Officer Hosley, I think, was the one on the scene, right? I believe it's Torn... Whatever. Their names are all very similar. They're all somewhat similar. No, I think it's Tornzey was on the scene. Okay. So the officer on the scene, who you identify him at, could have detained Mr. St. Clair after the accident, at least for purposes of investigating what happened? Yes, he could have. So why then... So he had sufficient knowledge to detain him. Why then wouldn't the subsequent officer, just focusing on the investigation of the accident for a moment, also have the same... Since his knowledge would be imputed to the next officer, why wouldn't he have the ability to detain him? I think it's less that he had the ability to detain him to investigate the accident than to maintain control of the scene. Yeah, but he could have detained him, could he not? He could have detained him to control the scene, but once he leaves the scene, I don't know that that incidental detention that happens to a passenger, when there's a traffic stop, the passenger's detained along with the car. So let me just... This is a hypothetical, obviously. You don't have to tell me it's not the facts of the case. I'm a police officer. I'm entitled to detain the passenger at the scene for purposes of investigation. He runs away. May I chase him and detain him? I don't believe you can. If you don't... So my ability to detain him at the scene is subject to his willingness not to run away from me. Yeah, I mean, because all he's doing... You can control your scene. If you're scared of him, if you think he's going to do something to scare you... Right. We're putting the frisker aside. Let's just do it. Yeah, but if he's just departing the scene, I don't... Unless you can point to, say, PC 148, and I have reasons why that doesn't apply, I don't think this... I want to get to that in a second. I don't think the incidental detention that comes with a passenger having standing because they don't feel free to leave, I don't think that extends to being able to chase the person all over God's green earth. I think that's kind of a... Well, but this isn't all over God's green earth. It's in the relative vicinity. I mean, the passenger's gone, right? Gone. How far away is he from the scene when he's detained? As far as he could run, I'm sure. Yeah. I mean, the landscape of Palmdale is a little obscure to me, but he's within a It's not the officer at the scene who's chasing him. It's these other officers. I understand that point, but the officers who apprehend Mr. St. Clair, they don't know from the information that was broadcast whether Mr. St. Clair was the driver of the passenger. Well, that gets me back to my Hensley point. So if the driver... Sorry, if the requesting officer's requesting a stop, he has to have reasonable suspicion for the stop. He doesn't have reasonable suspicion that St. Clair's the driver. He knows he's not the driver. How does he know that? He says he knows that. No, he doesn't say he knows that. After they're both detained, he's able to identify one or the other. But when they're running away in the dark, all he says is, there's been an accident and two people are fleeing. He gives two different descriptions. But two pretty similar people. I mean, 161, 165, maybe in the dark. They're both African-American. 161 and 170, 161 and like 250. So there's a much larger man, and he gives the description of the clothing. The much larger man is St. Clair. And he gives the description of St. Clair's clothing. I don't think the government's ever challenged that he knew which one was which. Your point is you think that Horsley, I believe, is the second officer. Yes. That he, even though he didn't know which was which, he doesn't have reasonable suspicion to stop St. Clair because Horsley wouldn't have had... He only has the reasonable suspicion that Tornzey has, because Tornzey's the one requesting the stop. So if Tornzey doesn't have reasonable suspicion that he's the driver, Horsley, there's a tongue twister here, Horsley does not either. So it's... Turn to the 148 issue. Sure. 148, I think that's the number. The California violation. Yeah, that's the willfully resist, delay, obstruct. You agreed, I think, at the beginning that the officer on the scene would have had the ability to detain the passenger to investigate what had happened there. Again, I think he has the ability to detain him to hold on to the scene. I don't... Well, Arizona v. Johnson and a whole series of cases say the officer can detain somebody for the purposes of investigation. He may not be required to answer questions, but he can certainly keep him there for the purposes of investigation. And so there's this incidental detention, but I'm not sure that that rises to the level of PC 148, right? Well, no. That you become a criminal. But there's more. Yes. Your guy, knowing, I think it's a reasonable inference, knowing that a police officer is coming and would like to talk to him, gets up and runs. And then another police officer approaches him and he runs away again. And that sounds very close to me to People v. Allen. So, I mean, in People v. Allen, the person that they're chasing is the person who's committed the crime. Here... The court doesn't say that. The court doesn't say, you know... After all, the person they're chasing is the person who's committed the crime. They have probable cause to arrest him for the crime. Here, the court is focusing on whether 148 gives them probable cause to stop him. And they say it does because somebody who the police... Somebody who knows the police want to talk to him in conjunction with an event that they're entitled to talk to him about and who runs away is obstructing the investigation. I don't know that he knows the police want to talk to him. He's not the driver. He hasn't done anything wrong. He's got a gun. He sees the police officer coming towards him. He's a felon in possession. And so he says, I better not hang around here. The police don't know he has a gun. The question is whether they're... He does. He's the passenger in the car. And he is not... They can't arrest him for being the drunk driver. He hasn't committed that crime. They may want to talk to him as a witness, but they have no actual right to his witnessing, right? They don't have any right to have... No, but they have the right to detain him. They have the right to detain him. And he then runs away in order not to be detained. That's the only reasonable inference from him running away. I'm not running away for exercise. He knows they don't want him to leave, but I don't think it's the only... I mean, I don't think it's the only reasonable inference that he knew that they wanted to talk to him as an individual. And that's what Allen says. Do they have interest in him as an individual? Well, surely the second officer has interest in him as an individual, doesn't he? Well, the second officer said he thought he was the driver, right? Mr. St. Clair doesn't know that anybody needs to talk to him as the passenger. He just doesn't want to be part of the driver's problem. So in other words, when he... He would have violated 148 if the first officer had said, please remain here because I would like to talk to everybody in the car. We'd certainly be a lot closer. And that is something that they don't do. But because he ran away, because before anybody could come and tell him that, he didn't violate 148. Well, they could have told him that as he was running away. All the cases the government cites, it's stop police, stop police. But the analysis, and I think it's Allen that you're referring to, is that it wasn't really the command to stop. It was the actions of the officer in pursuing that the defendant knew they wanted him to stop. And in Allen, there's one person who is the focus of the attention. It's the guy selling the clothing out of the back of the car. He knows they want to talk to him. His lawyer admits he knows that they want to talk to him. Here, again, there's no reason that St. Clair knows that he is the object of their attention as opposed to this reckless driver who's just done all this stuff. Why did he run away? Because he didn't want to talk to them. And as this court said, there's lots of legitimate reasons a person may not want to talk to police. But he's not just a person walking down the street who doesn't want to talk to the police. He's somebody in a car that's just crashed. And who hasn't been involved in the driver's problem. I mean, the driver is more than that. I mean, we've sort of glossed over what happened for the stop and said it was a lawful stop, which it clearly was. But there was more than that. There was erratic driving, speeding, not stopping when an officer is trying to pull them over, almost hitting a car, running over. I mean, really erratic, bad driving. That was flight. The driving at that point was flight before they actually stopped because they crashed. And that's all the driver's flight, right? And so the driver does all this, then jumps out of the car and runs away. And Mr. St. Clair is left with like a terrible choice. He's either here to, left holding the bag to deal with the driver's mess that he's created with police, annoying police, angering police at two in the morning, at a time when Mr. St. Clair knows that, you know, lots of lots of black men are having terrible interactions with police. Oh, Mr. St. Clair also knows, to be fair, that he's a prohibited possessor with a firearm. Yes, but I mean, he doesn't, you know, they, yeah, I mean, he doesn't know they would get it. And that's, I mean, ex-ante, nobody knows he has the firearm, right, other than him. So if we're looking at this, does he have reasonable reasons to run away from the police? I mean, every case where there's suppression, you know, the person had something, right? And I'm saying he has reasonable reasons to run away from the police because he has been left holding the bag by the driver. And it's, it's a scary situation. What it comes down to is whether the police had the authority to restrain him, just to keep him on the scene or to stop him. And they, they did. And so once they, once he, they violated, he violated that, they had the authority to pursue him after he flees. Well, they didn't exercise it, right? Nobody told him to stop. And that is, that, that is for 148. He has to be aware that they want to talk to him. But to say that nobody told him to stop, you have to interpret everything that happened in this flight, in the vehicle, chasing them, lights on, everything, the crash. That's not a, that's not an indication you're to stop. And then when he gets out and he trips immediately, right, as he sees him and runs and he sees them come to him, he knew they were officers. He knew they weren't, they, he was the focus of their attention. He knew they wanted him to stop. Whether they had time to yell that or not seems irrelevant. It also seems that it wasn't dispositive in Allen. But again, I mean, again, in Allen that, you know, there, there was one single focus. And if here there was any one single focus, that would be the driver. But when they encountered Mr. Sinclair, he was the only one in that parking lot. He was the one single focus at that point. But again, they say they thought he was the driver. I think they said they didn't know. Or they didn't know. They didn't know. He might have been the driver that they were going after. He could have been the driver. Because they thought he could be the driver. Right. And he's the only one in the parking lot at that moment. Yeah. But their, their focus is finding the driver, not finding, I mean, they say it's finding him because he might be the driver, not because he might be the passenger. But surely at that, at some point, he is completely aware that the police want to talk to him. Well, I mean, certainly when, when he's on the ground in handcuffs. Well, he's on, he, when he's hiding. Certainly when he runs. When he runs. When he's hiding behind a pole, trying to avoid the police. He, he doesn't want to be mistaken for the driver. I understand. But he knows they want to talk to him. Well. You know, whether or not he knows they want to talk to him because they think he's the driver or because he's a passenger, surely at some early point in this one, he knows the police want to talk to him. No. But he fled twice. He, I mean. He fled from police twice. He clearly doesn't want to talk to the police. Yeah. Okay. Yeah. But he, okay. I'm sorry. We've taken you quite a bit over time, but I'll give you a couple of minutes for rebuttal. I appreciate it. Hold on. Mr. Friedman. And I, you look familiar to me as well. I think I've seen you here before. We're having repeat customers today. Yes. I was here in December. So good morning again. David Friedman of the United States. May it please the court. I'll start where defendant left off with California penal code section 148. There was probable cause of a violation of California penal code section 148. And that's, that's enough to resolve this case under the collective knowledge or not on the collective knowledge doctrine under the inevitable discovery doctrine. Is it, would it be inevitable discovery or if they had probable cause to stop him, wouldn't this be a search incident to arrest? So it, I think it supports both of the bases. It could be a basis for detaining him and then there'd be separate basis for frisk. It's also if their frisk had not occurred here, he would have been arrested. Well, see, this is why I, this is why I'm, I'm having some focus on this. I'm having difficulty seeing under the frisk doctrine. If you, somebody is only being stopped for a reasonable suspicion, how these police officers had any basis for concluding that this individual was either armed or dangerous.  And the cases seem to say running isn't enough to suggest that you need to be frisked to see if you're armed and dangerous. And dark is half the day. So the doctor would only apply for 12 hours otherwise. So tell me what else there is. So the judge focused on the fact that this was a defendant. First you have the high speed chase, which. Right. But he's the passenger. Correct. But he doesn't stay at the scene. He flees again. He then hides and then he flees again. He flees. Okay. So he flees. That's, it's, it's two flees as opposed to a single flee. Right. So you got two flees. That's not enough to establish a suspicion that he's armed and dangerous, which is what you need to frisk him. What else do you have to suggest he's armed and dangerous? So I, I'm not, I think it could be enough in these particular circumstances where you have, let's assume it's not. What else do you have? Well, we have the time of night and again, the chase was so nice. So the, so the doctrine doesn't apply. Only applies during daytime. No. Well, this is, if you're asking me to assume the flight is not enough, it's sort of, we're engaging the divide and conquer. Well, if this flight, no, if this flight were during the day, would there be, would there be reasonable cause to think he was armed and dangerous? The key fact here is you have someone who's really determined to get away from the police and it's not. But the cases say, believe me, the cases say flight from the police is not enough to demonstrate that you are armed and dangerous. It may be, it may be a sign of your guilt of some kind, but in order to frisk on reasonable suspicion that the person is armed and dangerous. And so you've told me it was night. Let's assume that doesn't get me there. You've told me that he ran. Let's assume that doesn't get me there either. What else you got? I just want to stress though, this isn't just flight officer. You're walking down the street. No, you, you, you've twice told me that he ran away twice. I'm asking you a different question. What else do you have in addition to flight and nighttime? With respect, you're taking away all the factors and asking me to give you another factor. Those, no, with respect, all you have are those two factors, right? I think under this case, this court's case in Garcia, which is almost directly in point, it is enough. That was a case where someone was speeding. They tried to get away from the police. And this court said a reasonably prudent officer said that someone who has a quote, distinct aversion to getting away from the police, you know, they might be armed and that's, that's the same reasonable inference the district court made here. If you look at page 45 of the district court's, the motion hearing what the district court recognized, you have someone who really wants to get away from the police. And the inference there is that, you know, they're not only in a high speed chase, they're running again, they're hiding, they're running again. They might do quote anything to get away from the police. So just, I want to be clear, this is the government's position is that whenever somebody flees, a passenger flees from a high speed chase, the police, when stopping him, have reasonable suspicion that he is armed and dangerous. And in most cases, I think, yes, if you're, if you're in a high speed chase and then, you know, you're willing to do all, all these dangerous things to get away. You run a red light, you crash into a curb, you flee again, you hide. There's a reasonable inference you might be willing to do anything such as use a weapon to get, to get away from the police. And Garcia is the case you rely on for that. Garcia, I think is the strongest support for that. And Garcia, I think does support that. It's someone who was, who was just speeding. It wasn't a high speed chase. He then tried to get away from the officers. It wasn't, it didn't, he didn't spend a long time trying to get away. It was just briefly, he was stopped. And this court said the fact that he was willing to take dangerous risks on the road and had a distinctive virginity. What did Mr. Garcia have that Mr. St. Clair didn't have? In terms of what facts in that case? A fanny pack. He had a fanny pack. So he had, he had a, he was carrying on his back a package that the police padded  Correct. As opposed to this case in which they padded down Mr. St. Clair's clothing. Correct. But it was still a Terry Fresk. And I'm not sure a fanny pack is suggestive of having a weapon. Fanny pack is surely suggestive of carrying something. Is it not? Sure. I don't think it would be a weapon. I think if we found someone during a Terry stop and they had a fanny pack, I don't think this court would say that alone was sufficient. And the court didn't mention the fanny pack as a salient fact. I took you off the 148 issue. Before you go back to 148, I thought one of the reasons the officer, and I think it was Horsley stated that he had suspicion, reasonable suspicion that Mr. St. Clair could be armed, uh, was because not just because it was night, but because it was dark, they're in an empty parking lot. He can't see him. Well, they can't see his possessions. They can't really see what he's doing. They can't see his hands. I mean, all these things that would put a reasonable officer in fear that I forgot to find out what this guy has. Cause I just can't see it. And I thought that was a little bit different from Garcia. They could see more of what Garcia was up to, but still it was similar. That's certainly correct. And I should have mentioned those facts. So I appreciate you doing so. Another fact that was relevant, and this is all at page 123, his declaration is that I, he was, he was, that deputy was aware there had been many firearms arrests in that area. And the judge didn't rely on that, but it is a fact that's in the record. This court can rely on, but there were a number of facts. I think it's not just the flight. You do have the time of night. You have the fact that it's a dangerous situation. It's two 30 in the morning. It's isolated. They're the only people there that can't see his hands. And I, given it's just reasonable suspicion, given the Garcia case, I do think there was reasonable suspicion for a frisk, but the court, it doesn't have to get into those issues because the California Penal Code violation is enough. And I agree with the court that People v. Allen is on point here. People v. Allen specifically says there's no requirement of a verbal warning. All that's required is that it be unequivocally clear to the defendant that he's the object of police attention. Your friend says the difference between this and Allen is that there was reasonable suspicion or probable cause or something to think that Allen himself had committed a crime before the 148 violation. Is that required? I don't think so. All that's required is that the defendant be validly stopped and you cannot run for a validly stop. And I don't think the defendant can contest that he was validly stopped as part of a traffic stop in this case. Or could have been. Could have been. Yes. If it wasn't actually. And it would be somewhat absurd to say that he would have violated California Penal Code if he'd waited for the officer to get out of his car and say something. But because he was fast enough to run before the officer could say anything that that means it's OK. So under 148 if he if the officer had said stop stay here and St. Clair had said I don't want to talk to you and then walked away could the officer charge him with a 148 violation. Yes I think so. If you are the subject of valid stop you can't you can't walk away from the officer. And again I think that's clear under people be Alan. People be Alan it was enough that I believe the defendant was selling stolen goods. He looked at the officer he then ran and then he had. And those are the same facts we have here. Deputy Tornstein who was at the scene. Well but again I just want to get back to what your your friend said. Alan was observed selling stolen goods or do some doing something himself that might be illegal. Yes. There's no contention here that until they found him with a firearm that anybody had any reason to think St. Clair was doing anything illegal. Well I actually think at the time the crash occurred. No he's just stopped as part of the traffic stop. But once he runs from a traffic stop I do think that provides separate reasonable suspicion. Right. But that's that's the 148 violation. I well I think it's it's both. It's you don't even need 148 at that one point. So you think when somebody runs from a traffic stop you you then have reasonable suspicion that he has committed a crime. In many cases and certainly in this type of case where there's been a high speed chase and then someone runs hides and then runs again of course the reasonable suspicion wouldn't allow the frisk unless you could combine it with a reasonable suspicion that he was armed and dangerous. You certainly need a separate basis to say it's a frisk. You don't collapse the analysis. I agree on that point. But I think given the particular facts of this case or again you have the chase running and then hiding the running again you have you have a reasonable suspicion for both a stop and a frisk and then you also have this inevitable discovery argument on California Penal Code 148 and the facts really are exactly like people the Allen defendant has not cited any cases that are similar. He cites cases where people ran from unlawful detentions or front or they weren't detained at all. So I believe that's enough to resolve the case. I am getting close to the end of time. If there are any further questions I'm happy to answer them. But thank you. Just a couple of points unless you have questions. In terms of the frisking the Garcia case as we know it in the briefs that one got the standard wrong. It's how they say you can frisk if there's danger but the standard is armed and dangerous. Well he also had an open fanny pack in that case that he'd opened there. He'd opened before the officers looked at him. He was the driver who'd been speeding. There's other stuff but they do have the standard. But focus on the 148 issue because that's the one that I I'm most interested in. Yeah. Tell me why. Tell me why this isn't a violation of 148. Well I mean the difference between this and Allen again is that the stop here is an incidental stop of a passenger and so you have to go from when a passenger is incidentally stopped. That's enough for standing. But then you're also saying now that it's enough for criminal liability. Well no. Isn't it? 148 says and not these precise words you can't obstruct an officer in the conduct of a lawful investigation. Surely surely he had the ability to invest keep Mr. St. Clair at the scene to conduct a lawful investigation. And Mr. St. Clair runs away. Why isn't that obstruction? What it says you can't obstruct an officer in his legal duties. Okay. And so the question is. If he'd stopped him at the scene you agree he would have been within his legal duties and rights to to find out why in the world did this. Was this guy drunk. You know did he did he pass out. I don't think he's really obstructing the investigation by running away again because he doesn't have to talk to them right. Like if he leaves. And so they don't get to talk to him. That's the same as if he stays and refuses to talk to them in terms of the investigation. They're not getting any more information out of him if he's there and silent than if he's absent and silent. But there's so much case law that says that the act of flight is highly suspicious. I mean it's going to cause concern. But not on its own. Right. It has to be combined. It's clearly not what it was combined with. It's combined with a crash here that both people get out of the car and start running. It's combined with someone else's actions in that sense. Well but there's he's. Yeah. Okay. That's fair. Someone else drove the car into the thing that he ran away. So I'm not I don't want to let on pass your assertion that Garcia got the standard wrong. I find that troubling because Garcia and I'm going to quote the case the court said the frisk was quote was justified if a reasonably prudent person in the circumstances of the officer would have been warranted in the belief that his safety was in danger. Terry says the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. They're indistinguishable. It's almost a direct quote. Well no but there's language from Terry and from numerous other cases that go on to say armed and dangerous. It's not enough to say and this court has been clear in like U.S. v. Flatter for instance that it's it's not enough to say this person would be dangerous if they were armed. You have to you have to have some suspicion that the person is actually armed if you're going to go you know. And in Garcia at least they knew this was the guy who had taken the risks of driving. Are you suggesting that in Garcia the court was saying they didn't it was just general danger like he might punch them as opposed to they had a reasonable suspicion that he was armed and dangerous. Honestly I don't know what they were saying. They might have they might have said well if he was armed he would be dangerous. I think that's the one that has the language about the big man at night. Yeah. It's a pretty strong assertion though to say the court got the standard wrong when it's quite quoting almost verbatim from Terry and it's partially quoting Terry when it when it doesn't mention armed then it's to my mind the standards wrong because the standard is armed and dangerous. Well we've taken you over time again. I appreciate the extra time. Thank you. Thank you. The case is submitted.
judges: O'SCANNLAIN, HURWITZ, BADE